IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                  Case: 15-cr-02491 WJ

MICHAEL LIPPKE,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE

THIS MATTER is before the Court upon Defendant's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A), filed February 12, 2021 (Doc. 39) (the "Motion"). Having reviewed the parties' briefings and the applicable law, the Court finds that Defendant's motion is not well taken, as Defendant has not established that extraordinary and compelling reasons warrant a sentence reduction consistent with applicable policy statements issued by the Sentencing Commission. *See* § 3582(c)(1)(A)(i). The Motion is therefore **DENIED**.

## BACKGROUND

In January of 2016, Defendant Michael Lippke pled guilty to Possession of a Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct under 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). *See* Docs. 30, 31. Pursuant to a Rule 11(c)(1)(C) plea agreement, the Court sentenced him to 120 months' imprisonment, which represented the statutory minimum in light of his previous conviction.[1] *See* Docs. 30, 38.

---

[1] Defendant was sentenced in 1994 for Receipt of Child Pornography and was sentenced to one-year of imprisonment. PSR at ¶ 53.

The Bureau of Prisons ("BOP") now calculates Defendant's release date, with credit for time served and good time, as June 28, 2024. Doc. 41 at 2. This puts Defendant's total detention served at approximately 50% of his total imprisonment term. Defendant also faces a five-year term of supervised release with mandatory special conditions due to the nature of his conviction. Doc. 38 at 3, 7.

## LAW

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this rule and allowed for certain, rare "compassionate release" sentence modifications under § 3582(c)(1)(A). Before the First Step Act of 2018 was enacted, only the Bureau of Prisons ("BOP") could seek compassionate release. First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i) now permits a court to consider a compassionate release motion filed by a defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

Once a defendant has satisfied the exhaustion requirements, a court may review his motion for sentence reduction under the Policy Statement of § 3582(c)(1)(A)(i), which requires a court to first consider the following factors set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of

sentence[s] and the sentencing range established for [the offense] . . . (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also* USSG § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018) (A court must first consider the factors set forth in 18 U.S.C. § 3553(a)).

After conducting an analysis on the above requirements of § 3553(a), a court may reduce a defendant's sentence if it determines that:

(1)  (A) Extraordinary and compelling reasons warrant the reduction; or
     (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
(3) The reduction is consistent with this policy statement.

§ 1B1.13. To determine that "the [D]efendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" a court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community if defendant was released. § 3142(g).

## DISCUSSION

### I.  Exhaustion of Administrative Remedies

The Government concedes that Defendant has exhausted his administrative remedies, so the Court will not belabor its discussion on this point. Defendant appears to have submitted his request for compassionate release to the warden of the FCI Englewood prison facility ("Englewood"), and such request was denied on October 23, 2020. Defendant appealed the denial

on November 19, 2020, which appeal was also denied on December 10, 2020. While it is unclear when Defendant filed his initial request, 30 days have lapsed since his appeal was denied, so it can be assumed that 30 days have also lapsed since his initial request. Accordingly, Defendant has exhausted his administrative remedies for purposes of § 3582(c)(1).

## II.     18 U.S.C. § 3553(a)

The Court will not undergo an analysis for each individual factor set forth in § 3553(a), but considers factors (1), (2), (4), (6) and (7) relevant to Defendant's Motion. The nature and circumstance of the offense and the history and characteristics of Defendant do not weigh in his favor. Defendant has admitted to a long-term addiction to child pornography, Doc. 39 at 15, a serious offense under the law, and has been convicted for possessing child pornography once before. *Id*. at 15-16; PSR ¶ 53. Defendant's addiction even led him to various recovery programs for sex and pornography addiction. PSR ¶ 27. There is a need for Defendant's cumulative sentence to reflect the seriousness of this crime, and allowing its non-violent nature to persuade the Court in favor of a sentence reduction does not "afford adequate deterrence" to such conduct. § 3553(a)(2)(B). Defendant was already given a statutory minimum sentence in light of his previous child pornography conviction and a reduction in Defendant's sentence would result in an unwarranted sentence disparity among other defendants convicted of similar conduct, which again diminishes the important deterrent effects of imprisonment. *See id*. Only the seventh factor weighs in Defendant's favor—the need to provide restitution to victims. While possession of child pornography is certainly not a victimless crime, Defendant did not engage in predatory behavior directed at an individual minor. Nevertheless, taken together, the factors set forth in § 3553(a) weigh against granting Defendant's motion.

### III.    Extraordinary and Compelling Reasons

Now the Court turns to the substantive requirements of § 3582(c), which charge the Court with determining whether "extraordinary and compelling reasons . . . consistent with applicable policy statements issued by the Sentencing Commission" justify the reduction that Defendant seeks. § 3582(c)(1)(A). Specific factors to be considered include (1) the defendant's medical condition, (2) the defendant's age, (3) exceptional family circumstances, and (4) any other reason "[a]s determined by the Director of the Bureau of Prisons." § 1B1.13, App. Note 1.  Defendant asks the Court to reduce his sentence to time-served due to (1) the potential spreading of COVID-19 at Englewood in conjunction with his age (76), hypertension, dementia, skin cancer, gout and hypothyroidism,[2] Doc. 39 at 2-3, and (2) his wife's age (82), incapacitation and medical conditions. *Id*. at 2.

Defendant believes that his age and health conditions are "extraordinary and compelling reasons" under the statute because age, hypertension and cancer may exacerbate the symptoms of COVID-19 if the virus is contracted. This argument, however, runs afoul of the plain language of the policy statement set forth by the Sentencing Commission. *See* § 1B1.13, cmt. n.1(A). It similarly fails under the Court's analysis of Defendant's condition as it applies to the catch-all policy statement set forth in § 1B1.13, cmt. n.1(D).

Section 1B1.13, cmt. n.1 holds that "extraordinary and compelling reasons" include certain categories of "serious physical or medical conditions" which "substantially diminish[] the ability of [a] defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." It is important to note that the applicable provision is written in the present tense: "The defendant *is* suffering" from a condition "that substantially

---

[2] The Government states that Defendant has hypertension, gout, hypothyroidism and dementia, but his dementia is mild and his skin cancer is "resolved." *See* Doc. 41 at 9 (citing USAO Ex. 3 at 8, 23 (2020 Medical Records)).

*diminishes*" his ability to provide self-care. § 1B1.13, cmt. n.1(A)(ii). Here, however, Defendant bases his request on the speculative claim that *if* he were to contract COVID-19 for the second time, he may have a persistent inability to provide self-care. Therefore, because Defendant's age and present condition has not hindered his self-care capabilities absent a COVID-19 infection, the Court would have to come to the illogical conclusion that Defendant's ability to provide self-care has been diminished as a mere result of the anxiety that COVID-19 may affect him unusually in order to grant his request pursuant to § 1B1.13, cmt. n.1(A). *See United States v. Young*, 2020 U.S. Dist. LEXIS 202543, at *12 (D. Kan. 2020) (finding that subsection (A) of § 1B1.13 did not apply because the defendant with health conditions would potentially not be hindered in his ability to provide self-care "unless and until" he contracts COVID-19). Even if the commentary provided for the possibility of a *potential* loss of the ability to provide self-care, which it does not, Defendant's medical conditions are not "extraordinary." As the Government notes, none of Defendant's medical conditions definitively put him at risk for contracting any "severe" illness from COVID-19. Doc. 41 at 10 (citing *People with Certain Medical Conditions*, Centers for Disease Control and Prevention ("CDC list") (Feb. 22, 2021) (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html) (last accessed Mar. 2, 2021)). The only alleged illness Defendant suffers from that is listed in the CDC list as placing an individual at "increased risk of severe illness" is his cancer, which, based on BOP records, is "resolved." *See* Doc. 41 at 9 (citing Doc. 41 at 23, Exhibit 3, Bureau of Prisons Health Services, Health Problems).

Defendant also admits he has already contracted COVID-19, Doc. 39 at 19, and records indicate he was entirely asymptomatic at the time of his testing and throughout his isolation period. *See* Doc. 41 at 10 (citing Doc. 41, Exhibit 3, Bureau of Prisons Health Services, Clinical Encounter). But Defendant nevertheless points to a handful of disparate cases and sources which

6

suggest that a person who has contracted COVID-19 may not be immune to the virus for the rest of his life.³ While it may be true that catching COVID-19 does not result in lifelong immunity for some individuals, the Court takes notice of various sources which agree with the Government that reinfection is quite unusual. Sharpless, Norman, M.D., SARS-CoV-2 ANTIBODIES CAN PROTECT FROM REINFECTION, NCI STUDY SUGGESTS, Cancer.gov (Dec. 21, 2020) ("reinfection appears to be relatively rare . . .") (https://www.cancer.gov/news-events/cancer-currents-blog/2020/coronavirus-antibodies-protect-against-future-infection) (last accessed Mar. 23, 2021); REINFECTION WITH COVID-19, CDC (Oct. 27, 2020) ("Cases of reinfection with COVID-19 have been reported, but remain rare.") (https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html) (last accessed Mar. 23, 2021). Furthermore, the Court is unconvinced that the risk of reinfection, if any, is enough to constitute an "extraordinary" reason when the underlying speculative risk of contracting COVID-19 is already insufficient under § 1B1.13, cmt. n.1(A). *See United States v. Cabrera*, 2020 WL 2549941, at *4 (C.D. Ill. May 19, 2020) ("Because Defendant Cabrera remains asymptomatic despite testing positive for COVID-19, the risk of him suffering severe complications from the virus is significantly diminished compared to others in the BOP who have either not contracted the virus or who have contracted the virus and exhibited symptoms or complications."); *United States v. Pinkston*, 2020 WL 3492035 (S.D. Ga. June 26, 2020) (relief denied to 70-year-old inmate who recovered after hospitalization for COVID-19, and other conditions were controlled); *United States v. Reece*, 2020 WL 3960436, at *6 (D. Kan. July 13, 2020) (denying release for 61-year-old who suffers from hypertension, transient ischemic attacks, and chronic kidney disease who recovered from COVID-19 and remained asymptomatic.)

---

³ *See, e.g.,* EPISODE 18, IMMUNITY AFTER RECOVERY FROM COVID-19, WHO (Dec. 23, 2020) ("[W]e do have clues from other coronaviruses, that it will not be a lifelong immunity.") (https://www.who.int/emergencies/diseases/novel-coronavirus-2019/media-resources/science-in-5/episode-18---covid-19---immunity-after-recovery-from-covid-19) (last accessed Mar. 23, 2021); *United States v. Smith*, 2020 U.S. Dist. LEXIS 237539, at *9 (W.D. Va. 2020) ("[I]t is not certain that Smith is immune from the virus.").

Under the catch-all provision of § 1B1.13, Defendant's argument also fails. Section 1B1.13, cmt. n.1(D) states that release may be appropriate based on "other reasons," that is, "extraordinary and compelling reason[s]" either by themselves or in combination with a defendant's medical condition. Upon review of Defendant's Motion, the foundation of which is Defendant's age and health conditions,[4] the Court finds no "extraordinary" circumstance warranting a sentence reduction over COVID-19 fears, particularly when Englewood appears to be undergoing extensive measures to manage COVID-19.[5]

With regard to Defendant's claim that his elderly wife is suffering from multiple serious medical conditions and frequent falls, Defendant has failed to show that he is the only viable option to care for his wife. *See* § 1B1.13 cmt. n.1(C)(ii) (An extraordinary and compelling circumstance may include "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver . . ."); *see also United States v. Delgado-Montoya*, 2020 WL

---

[4] For cases in which medical conditions, even medical conditions claimed by the CDC to augment the symptoms of COVID-19, have been deemed neither extraordinary nor compelling, see *United States v. Baca*, 2020 WL 5369078 (D.N.M. 2020) (finding that hepatitis C was not extraordinary or compelling, though the CDC declared that anyone with underlying condition, including liver disease, "might be at a higher risk of illness from COVID-19," and effectively that "every disease and disorder could magnify COVID-19's effects.") (J. Browning); *United States v. Gaskin*, 2020 WL 6799014 (D.N.M. 2020) (finding that a defendant with diabetes and hypertension did not have extraordinary or compelling justification for release because his fears were speculative and there was no outbreak of COVID-19 at his facility) (K. Riggs); *United States v. Olsson*, 2020 WL 6869979 (N.M.D. 2020) (finding that defendant with chronic kidney disease, heart failure, diabetes and hypertension did not demonstrate extraordinary and compelling circumstances) (K. Riggs); *United States v. Delgado-Montoya*, 2020 WL 4934308 (D.N.M. 2020) (finding that defendant's COVID-19 risk factors were insufficient to establish extraordinary or compelling justification for release because, though the risk factors were present, Defendant's illness absent an infection of COVID-19 had been managed at the prison facility) (K. Gonzales). The Court is aware that some courts throughout the United States have chosen to release inmates due, in part, to COVID-19, but here, Defendant merely theorizes that another so-called "wave" of COVID-19 will infect the prison. Additionally, Defendant has only served a small portion of his sentence. *See United States v. Rodarmel*, 2020 WL 2840059, at *2 (D. Kan. 2020) (noting that many cases in which a court granted compassionate release on the partial grounds of COVID-19 involved "defendants [which] had an extremely short term (five months or less) left on their sentences[.]").

[5] As the Government notes, "among the many other actions it has taken, the BOP requires any and all visitors to its prisons to wear appropriate face coverings and undergo symptom screening; has restricted inmates' and staff members' movements to maximize social distancing; places inmates in quarantine and medical isolation when necessary; mandates hand-washing and other cleaning measures at certain points throughout the day; and has implemented other advanced health-screening measures for inmates and staff alike (for example, testing people for COVID-19 and frequently taking their temperatures)" (citing BOP COVID-19 Modified Operations Plan (Nov. 25, 2020) (https://www.bop.gov/coronavirus/covid19_status.jsp). Defendant contends that Englewood's handling of COVID-19 is inadequate, but his complaints run afoul of the record. For example, Defendant states that Englewood conducts "symptomatic only" COVID tests, but the fact that he tested positive without symptoms wholly undermines this claim.

4934308, at *11 (D.N.M. 2020) (denying compassionate release when Defendant's daughter needed care because Defendant failed to explore reasonable options or evidence that someone else was unable to care for the daughter). Indeed, Defendant has claimed that his children will not care for her, but has not claimed that he or his wife have explored alternative means of adult care. *See United States v. Delgado-Montoya*, 2020 WL 4934308, at *11 (D.N.M. 2020) (denying a defendant's release to care for daughter when defendant did not explore reasonable options for care). The Court is likewise unconvinced that his wife's medical problems and risk of falling is compelling given the circumstances, as (1) Defendant has not shown that if released, he poses no risk of bringing COVID-19 to his wife, who is older and has health conditions that put her at a higher risk than himself, and in fact the Motion implies that he does pose this risk, and (2) Defendant failed to show sufficient concern for his wife while engaging in multiple serious crimes involving the sexualization of children during their relationship, crimes which ultimately resulted in lengthy confinement.

## IV. Danger to the Community

The most convincing position set forth in Defendant's Motion is his argument that he does not pose a danger to the community under § 3142(g).[6] In light of his age and non-violent history in spite of his predilection for child pornography, it may be the case that he poses little risk of physical danger to individuals in the community if released. However, because the Motion fails otherwise under 18 U.S.C. § 3553(a) and § 3582(c)(1)(A), the Court need not make this determination.

---

[6] Defendant was arrested in 1997 for Battery on a Household Member, but the case was dismissed and is therefore not probative of the issue of Defendant's potential danger to the community.

## CONCLUSION

The Motion fails in light of the Court's analysis of the factors set forth in 18 U.S.C. § 3553(a). Furthermore, Defendant only articulates a speculative fear of COVID-19, and has not demonstrated that his conditions diminish his ability to provide self-care under the applicable policy statement of USSG § 1B1.13, cmt. n.1. For the reasons set forth in this Memorandum Opinion and Order, Defendant's Motion to Reduce Sentence is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE